Opinion delivered June 25, 1886.

[No. 3998.]

## Robert Rosborough *v.* The State.

1. Practice—Evidence.—The general rule of evidence that, "if a question is put to a witness which is collateral or irrelevant to the issue, his answer can not be contradicted by the party who asked the question, but is conclusive against him," is limited to collateral and irrelevant inquiries. The animus, motive or ill will of a prosecuting witness to the accused in a criminal case is never a collateral or irrelevant inquiry. See the opinion for a case in which the rule does not apply, and for evidence erroneously excluded.

2. Same—Bills of Exception.—It is error for the trial court to refuse a defendant time in which to prepare his bills of exception, but to render such error cause for reversal it must be made to appear that injury to the rights of the accused probably resulted from the action of the court. Note this court's suggestion that time should always be allowed for the preparation of bills of exception, in as much as it rests properly with the defendant's counsel to determine the importance of the ruling of the court to which he desires to reserve his exceptions.

3. Same—Mutual Combat—Charge of the Court.—See the opinion *in extenso* for facts *held* not to present the issue of mutual combat, wherefore the trial court should not have charged the law applicable to to an assault made in the course of a mutual combat.

Appeal from the District Court of Harrison. Tried below before the Hon. J. G. Hazlewood.

The conviction in this case was for an assault with intent to murder one Harrison Young, in Harrison county, Texas, on the tenth day of March, 1884. The penalty assessed against the appellant was a term of two years in the penitentiary.

The case is disclosed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE.   This is a conviction for assault with intent to murder.

If the testimony of the assaulted party, Young, is a true narration of the facts, this is what occurred.   He, Young, met defendant in the road and asked him for some money defendant owed him.   Defendant replied that he did not want Young to come "bull dozing" him about money; that he was mad any how, and if Young fooled with him he would pick up some thing and split his brains out.   Young drove his wagon down the road to the house of one Williams, defendant following, and he and witness were quarreling.   Witness got out of his wagon to see some one in the house, and just as he reached the gate, some one told him to look out, that defendant was going to strike him with an ax.   He turned round and defendant was coming down with an ax; he caught the blow on his arm, and defendant struck two more blows, striking him on the shoulder and back. The testimony further sufficiently showed the ax, as used, to be a deadly weapon.   The witness did not in any way attempt to strike the defendant, but tried only to ward off the blows.

Fanny Young, daughter of the witness Young, substantially coroborated the testimony of her brother.   She was the one who called out to witness that defendant was going to strike.

The testimony of the State's witness Trammell agrees with that of Young up to the time Young got out of the wagon. From that point on it is in substance as follows: "When Young got out of the wagon he had a whip pole in his hand about six feet long and three-fourths of an inch in diameter at the larger end.   As he started in to Williams's house he passed defendant, and then turned round facing him, with his pole drawn up, the little end in his hand, and said to defendant: 'You fool with me this morning, and I will put you to death.'   Defendant then grabbed up the ax, and in bringing it up struck Young on the

arm. He struck at Young three times, but hit him only once."
The evidence of this witness seems to have been matter of sur-
prise to the prosecution, and, having laid a proper predicate,
another witness was called who said that, in an interview be-
tween the district attorney and Trammell, just before the trial,
the latter stated the facts in harmony with Young's evidence.
This was the State's case.

Roseborough, a brother of the defendant, and one David Simon,
for the defense, corroborated the narrative of Trammell. The
former also testified that, a day or so before the difficulty, Young
told him that defendant was owing him, and that he must pay,
or the next time he saw him he would whip or kill him. All of
the witnesses agree that Young and defendant were quarreling
as they came down the road to Williams's house.

Now, here we find an evident conflict in the evidence; and, in
view of this conflict, the defense, in cross-examination, asked
the assaulted party: "Are you not unfriendly to the defendant?"
To which he replied that he was not. Afterward the defense
offered to prove that the defendant had been active in procuring
an indictment for theft of hogs to be presented against Young;
that he was a material witness for the State in the case, and that
he was active in getting evidence for the State. The defense
also offered in evidence the indictment against Young then pend-
ing in the trial court. On objection this evidence was all exclu-
ded, the learned trial judge stating, in his addenda to the bill of
exception, that the defense having asked the question, "Are you
not unfriendly to the defendant?" and the witness having an-
swered in the negative, they could not be heard to contradict the
witness; that the witness, in his testimony in chief, did not speak
of his good or ill feeling; and in eliciting his answer upon this
subject, the defense made the witness their witness. After
stating this to be the rule, the learned judge adds that "it seems
to us reasonable that such examination might be made, yet, from
the authorities produced, the court thought it safer to hold as we
did." Now, the rule to which reference is made is thus tersely
stated: "If a question is put to a witness which is collateral or
irrelevant to the issue, his answer can not be contradicted by the
party who asked the question, but it is conclusive against him."
(1 Greenl. Ev., sec. 449.)

It will be seen that the rule is limited to collateral and irrele-
vant inquiries, and this is what renders it inapplicable in this
instance; for the animus, the motive, or the ill will of a prosecu-

ting witness—the injured person—is never a collateral or irrelevant question in a criminal case.    The bias, the prejudice, thus shown is, in most cases, of the utmost importance, and is always material in order to enable the jury to form a correct judgment as to the credit to which the testimony of the witness is entitled. (See the rule discussed in Hart v. The State, 15 Texas Ct. App., 202; Newcomb v. The State, 37 Miss., 383; Kent v. The State, 42 Ohio St., 426; S. C. reported with a learned note in 6 Crim. Law Mag., p. 520.)

The proposed testimony was well calculated to show bias of the witness, and it was error to exclude it.    There being so great a conflict between the testimony of the witness to be affected by this proof and that of other witnesses in the case, it was of the greatest importance that the evidence should have been allowed; and thus the error is material and requires a reversal of the judgment.

The refusal of the trial court to allow time for the proper preparation of bills of exceptions, when requested, is error, but, in order to constitute reversible error, it must further be made to appear that injury probably resulted from such refusal.    In this case no such injury appears; but we desire to remark that it rests with counsel to determine whether or not the exceptions he desires to have saved to the rulings of the court are of importance, and requests for time for this purpose should always be granted.    (Smith v. The State, 19 Texas Ct. App., 95; Kennedy v. The State, Id., 618.)

The evidence, as we have stated it, calls for a charge instructing the jury upon the law of assault with intent to murder; upon the law of aggravated assault; the law of self defense, and the law governing assaults made in a difficulty which the accused has provoked or brought on.    These issues of law were well presented in the charge given.    But the jury were also charged upon the subject of mutual combat, and the law arising upon an assault made in the course of a conflict mutually entered in to. We are of the opinion that the facts in evidence did not present such an issue, and that the giving of such a charge was calculated to confuse and mislead the jury.    From the facts we think it clear that the one or the other of the parties provoked, or brought on the conflict, and that the one or the other not chargeable with this acted upon real or apparent necessity, and this

excludes the idea of a mutual combat. The question of fact involved was one for the jury to determine under appropriate instructions.

*Reversed and remanded.*

Opinion delivered June 25, 1886.